Franklin THOMAS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 30A01–0008–CR–280.

Court of Appeals of Indiana.

May 30, 2001.

Christopher T. Smith, Greenfield, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Franklin Thomas appeals his conviction after a jury trial of battery by body waste, a Class D felony.[1] He raises two issues on appeal: first, whether the trial court erred by admitting hearsay testimony of one deputy who testified that another deputy said Thomas spit on him, and second, whether the legislature intended Ind.Code § 35–42–2–6 to apply to situations where no communicable disease could be transmitted to an officer. We affirm.[2]

## FACTUAL HISTORY

On May 15, 1999, Spiceland Reserve Officer Ed Freestone pulled over the driver of a truck after he observed the truck weaving across the center line and off the road. Two Hancock County deputies, Jeffrey Scott and Noble Cox, arrived to provide assistance a few minutes after the stop. The driver, Thomas' girlfriend, was arrested for driving while intoxicated, and the passenger, Thomas, began using abusive language with the officers. Thomas appeared to be intoxicated, and he was unable to provide a driver's license to the officers upon request.[3] The officers asked him to take a breathalyzer test, and Thomas did not blow properly into the testing apparatus. As Deputy Scott withdrew the testing apparatus from Thomas' mouth, Thomas spit on Deputy Scott. The officers then arrested Thomas for disorderly conduct and battery by body waste.

Between the arrest and trial, Deputy Scott suffered significant health problems, the cause of which is not clear from the record.[4] At trial, Deputy Scott testified that he was on medication that might affect his ability to accurately remember what happened at Thomas' arrest. Later in the trial, Deputy Cox was allowed to testify, over objection, that Deputy Scott told him at the time of the arrest that Thomas spit on him. Thomas was convict-

---

1. Ind.Code § 35–42–2–6.

2. We heard oral argument at the Gibson Circuit Court on April 5, 2001. We gratefully acknowledge the hospitality of Judges Walter H. Palmer and Earl G. Penrod, the staff of their courts, and the Gibson County Bar. We also commend counsel for their capable advocacy.

3. Deputy Cox testified they were attempting to ascertain whether Thomas was sober and licensed so that he might drive his girlfriend's truck away.

4. There is no indication from the record that the development of Deputy Scott's health problems bore any relation whatsoever to Thomas' spitting on him.

ed of battery by body waste and disorderly conduct and sentenced to three years and six months in the Department of Correction.

## DISCUSSION AND DECISION

### 1. *Hearsay Evidence*[5]

 Thomas maintains that as Officer Freestone and Deputy Cox did not actually see the spittle land on Deputy Scott, and as Deputy Scott's memory was not reliable, the jurors would have heard insufficient evidence to determine that Thomas spit on Deputy Scott had the alleged hearsay statement been excluded. Indiana Evidence Rule 801(d)(1) provides that a statement is not hearsay if:

> [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony, offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, and made before the motive to fabricate arose....

Thomas argues the trial court improperly admitted Deputy Scott's statement to Deputy Cox under this evidentiary rule. He states that there was not "any express or implied charge against Deputy Scott of recent fabrication or improper influence or motive." (Br. for Appellant at 4.)

Conversely, the State argues that Thomas brought Deputy Scott's credibility into issue by asking Deputy Scott whether any medications he was taking might affect the accuracy of his memory regarding Thomas' arrest. (Br. of Appellee at 6.) Deputy Scott's health problems occurred after Thomas' arrest and prior to trial; thus, the State argues, when Thomas questioned the accuracy of Deputy Scott's testimony during cross-examination, he was making an "implied charge ... of recent fabrication." *Id.* The prosecutor's presentation of Deputy's Cox's testimony that Deputy Scott reported Thomas spit on him might then be viewed as an attempt by the prosecution to rehabilitate Deputy Scott after his credibility had been called into question. *Id.*

The trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of abuse of discretion. *Smoote v. State,* 708 N.E.2d 1, 3 (Ind. 1999); *Carter v. State,* 692 N.E.2d 464, 465 (Ind.Ct.App.1997). Even if evidence is improperly admitted, we disregard error in the admission of evidence unless it affects the substantial rights of a party. *Hatcher v. State,* 735 N.E.2d 1155, 1161 (Ind.2000). We decline to hold that every lapse of memory on the part of a witness amounts to a fabrication of testimony. Such an interpretation of that hearsay exception would quickly subsume the rule. Accordingly, Thomas' attack on Deputy Scott's ability to remember since his accident does not necessarily suffice as an "implied

---

**5.** The actual line of questioning went as follows:

Q: After the incident and the spitting incident did Jeff Scott ever tell you that Mr. Thomas spit on you? [sic]

A: After the brief commotion of taking Mr. Thomas into custody yes, that is what we applied the disinfectant to his shirt and to his hands and my hands.

Q: Let me ask you about that. So, Deputy Scott did tell that Mr. Thomas spit on him?

OBJECTION: (Mrs. Zelin) Objection your Honor. I move to strike Officer Scott was here and testified as to what occurred.

BY MR. MARSHALL: That is why it is not hearsay Your Honor. Because he was here and available to ask about it.

BY THE COURT: Overruled.

Q: Did he tell you he was spit on?

A: Yes sir, he did.

(R. at 255.)

charge of recent fabrication" under Evid. R. 801(d)(1).

However, we need not decide whether this statement was hearsay, as its admission, if erroneous, was harmless error. An error in admitting evidence will be found harmless if its probable impact on the jury, in the light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. *Berry v. State*, 715 N.E.2d 864, 867 (Ind.1999). Prior to the statement in question, the jury heard Deputy Scott testify Thomas spit on him. (*Id.* at 137.) Officer Freestone testified he saw Thomas spit towards Deputy Scott. (R. at 159.) Deputy Cox said he saw Thomas spit toward Deputy Scott, that he observed what appeared to be saliva on Deputy Scott's chest, and that he helped clean the liquid off Deputy Scott's chest afterwards. (*Id.* at 214–15.) Thus, even if the trial court did err in admitting Deputy Cox's statement, such error was harmless.

### 2. *Application of Ind.Code § 35–42–2–6 and Risk of Disease*

Thomas argues that if he did spit on Deputy Scott, the saliva landed only on Deputy Scott's shirt, under which he wore a bulletproof vest. Thus, the saliva did not come into contact with his skin, and therefore the statute should not apply to his conduct. (Br. for Appellant at 6.) The record does not indicate Thomas preserved this question for appeal by raising it at the trial court level; nor does Thomas argue fundamental error in his brief. However, we prefer to resolve issues on the merits, and we exercise our discretion to do so here.

Thomas cites *Newman v. State*, 677 N.E.2d 590 (Ind.Ct.App.1997), the only reported case dealing with Ind.Code § 35–42–2–6. (Br. for Appellant at 5.) Newman was arrested for prostitution, and the arresting officers were aware from previous arrests of Newman that she was HIV-positive. On appeal, Newman challenged the sufficiency of the evidence to support the battery by body waste conviction. This court found that "Newman intentionally swung her head around causing saliva to land on the officers. This evidence alone is sufficient to support Newman's conviction of battery by body waste." *Newman*, 677 N.E.2d at 593.

Thomas distinguishes *Newman* by noting that in that case, the officers faced a substantial risk of disease due to Newman's HIV-positive status and her physical resistance to arrest. He argues for a strict reading of the statute and notes that the statute "does not explicitly allow for convicting a Defendant whose bodily fluid has only landed on the clothing of a law enforcement officer." (Br. for Appellant at 6.) Therefore, he argues, this court should not expand the category of conduct prohibited by the statute to include incidents such as Thomas' where the officers were not faced with any substantial risk. *Id.*

The State, in contrast, argues that the court in *Newman* did not distinguish between whether Newman's saliva landed on the skin or clothing of the officers; therefore, it also should not matter in Thomas' case. The State argues that the phrase "on a law enforcement officer" should be construed to mean anywhere on an officer, regardless of skin or clothing. (Br. of Appellee at 5.)

We first note that Deputy Scott testified the saliva hit his chest *and his hand;* therefore, it appears the jury heard sufficient evidence to convict Thomas even under his theory regarding how the statute should be interpreted. (R. at 142.) However, we also wish to address the issue

posed by Thomas regarding the proper interpretation of this statute.

The critical question for this court is whether the statute is ambiguous on its face. If the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *Montgomery v. Estate of Montgomery,* 677 N.E.2d 571, 574 (Ind.Ct.App.1997). However, when the language is susceptible to more than one construction, we must construe the statute to determine the apparent legislative intent. *Id.* We presume words appearing in the statute were intended to have meaning and we endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Rupert v. State,* 717 N.E.2d 1209, 1210 (Ind.Ct.App.1999).

The pertinent portion of the statute is as follows:

**35–42–2–6 Battery by body waste**

(c) A person who knowingly or intentionally in a rude, insolent, or angry manner places blood or another body fluid or waste *on a law enforcement officer* or a corrections officer identified as such and while engaged in the performance of official duties or coerces another person to place blood or another body fluid or waste on the law enforcement officer or corrections officer commits battery by body waste, a Class D felony.

(Emphasis added.) We decline to find that this statute is ambiguous. As we are bound to give words in a statute their plain and ordinary meaning, we find that "on a law enforcement officer" means just that— on the officer's person, whether that portion of the officer's person be clothed or not. There is no language in the statute indicating the fluid must contact the skin of the officer or pose a risk of disease transmission for there to be a battery. In fact, it seems plausible the legislature intended to penalize the offensive, even dis-

gusting nature of such a touching alone because the statute includes enhanced penalties for cases in which a disease actually was or could have been transmitted to the officer. As the statutory language is clear, and the jury heard more than enough evidence that Thomas spit on Deputy Scott, we must affirm his conviction of that offense.

Affirmed.

SHARPNACK, C.J., and BAILEY, J., concur.