**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JANICE WILLIAMS, | ) | |
| | ) | |
| Appellant/Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1404-CR-242 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee/Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David Cook, Judge
Cause No. 49F07-1308-CM-050940

**November 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

While working as a doorman at a bar, Daniel Smith heard a loud noise and witnessed Janice Williams back up her car and hit a parked car behind her. Williams' blood-alcohol content was 0.19. At the bench trial Williams was found guilty of Class A misdemeanor operating a vehicle while intoxicated with a blood-alcohol content of 0.15 or above. The judge sentenced Williams to 365 days in the Marion County Jail with 363 days suspended to probation. Williams now appeals, arguing that the evidence is insufficient to prove that she was driving her car on the night of the accident. Finding that the evidence is sufficient to support her conviction, we affirm the trial court.

**Facts and Procedural History**

On August 4, 2013, Smith was working as a doorman at 8 Seconds Saloon/Tremors bar ("Tremors") in Indianapolis.[1] Tr. p. 10-11. As part of his job he maintained both the "front line" and "VIP" entrances to the bar. *Id*. at 11. Because Smith worked both entrances he walked "back and forth all night" and always watched the parking lot, "because you never know what's going to happen." *Id*. Around 1:00 a.m., during one of his routine trips between the two entrances, Smith heard a loud noise and saw twenty-seven-year-old Williams back up her car and hit the car behind her. *Id*. at 11-12, 37. Smith was standing about thirty feet away from Williams' car at the time of the accident. *Id*. at 15.

Smith immediately called over to the police officers working outside the bar and walked to Williams' car. *Id*. at 12, 17-18. He approached Williams and said, "hey, you

---

[1] The correct name of the bar is 8 Seconds Saloon/Tremors, located at 111 North Lynhurst Drive in Indianapolis. The transcript as well as the State's and Smith's briefs misspell the name of the bar.

2

just hit that car behind you." *Id*. at 12. Williams, who was still in the driver's seat, then got out of the car and stated, "I didn't hit nothing." *Id*. at 12. Williams yelled and was very belligerent. *Id*. Williams completely denied that the accident had occurred, denied she had been driving the car, and repeatedly stated, "I bought the car like this." *Id*. at 13, 24. Officer Thomas White of the Indianapolis Metropolitan Police Department walked over to the scene of the accident and identified Williams' car as a Monte Carlo and the car that she hit as a Buick Le Sabre. *Id*. at 21, 23. He saw "fresh damage on the [Buick Le Sabre and] . . . pieces of car on the ground that appeared to come from the Buick Le Sabre or from the Monte Carlo." *Id*. at 24. The officer also observed that Williams "had slurred speech, . . . was unsteady in her balance [,] and . . . had a very abusive attitude." *Id*. Officer White then contacted a DUI officer to assist. *Id*. The DUI officer noted an odor of alcohol and an unsteady balance, so he administered a portable breath test. *Id*. at 30. The officer then asked Williams to submit to a Standard Field Sobriety Test, but she refused. *Id*. at 31. After the DUI officer read Williams Indiana's Complied Consent Law, she still refused to submit a chemical test. *Id*. The DUI officer then took Williams into custody, obtained a search warrant for a blood draw, and took her to the hospital to have the blood test conducted. *Id*. at 32-33. The test indicated that Williams had a blood-alcohol content of 0.19. State's Ex. 2.

The State charged Williams with Count I: Class A misdemeanor operating a vehicle while intoxicated with endangerment and Count II: Class A misdemeanor operating a vehicle while intoxicated with a blood-alcohol concentration of 0.15 or above. Appellant's App. p. 5-6, 15-16. At the bench trial Williams testified that her friend David had been

3

driving her car because she had consumed too many drinks; however, she did not know David's last name because he was her "friend's friend." Tr. p. 38, 41. Williams claimed that after getting out of the car, David walked away from the scene. *Id*. at 39. Williams insisted that she had been sitting in the back seat of the car and that she did not remember seeing Smith at all that night. *Id*. at 38-39. She stated that she was "[n]ever driving" the car and that "the accident never happened because that man's car was already wrecked." *Id*. at 43. Last, Williams testified that because she had very dark-tinted windows, a person would not have been able to see inside her car and that the parking lot was very dark. *Id*. at 39-40, 44. Smith, however, identified Williams in the driver's seat and stated that the parking lot was well-lit. *Id*. at 16.

Williams was found guilty of only Count II: Class A misdemeanor operating a vehicle while intoxicated with a blood-alcohol content of 0.15 or above. *Id*. at 50-51; Appellant's App. p. 9. The judge sentenced Williams to 365 days in the Marion County Jail with 363 days suspended to probation. Tr. p. 54; Appellant's App. p. 9.

Williams now appeals.

**Discussion and Decision**

Williams contends that that the evidence is insufficient to support her conviction for operating a motor vehicle while intoxicated with a blood-alcohol content of 0.15 or above. When reviewing the sufficiency of the evidence, we consider only the probative evidence and reasonable inferences supporting the judgment. *Meehan v. State*, 7 N.E.3d 255, 257 (Ind. 2014). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a

4

conviction. *Id.* Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *Id.*

To convict Williams of Class A misdemeanor operating a motor vehicle while intoxicated with a blood-alcohol content of 0.15 or above under Indiana Code section 9-30-5-1(b), the State was required to prove beyond a reasonable doubt that Williams operated "a vehicle with an alcohol concentration equivalent to at least fifteen-hundredths (0.15) gram of alcohol per: (1) one hundred (100) milliliters of the person's blood; or (2) two hundred ten (210) liters of the person's breath." On appeal, Williams only disputes that she was driving her car. *See* Appellant's Br. p. 8. ("While Ms. Williams may have been impaired, she denied being the driver of the car.").

Williams argues that although Smith testified that he saw Williams driving the car and sitting in the driver's seat, "this incident took place in a dark parking lot and Ms. Williams' car windows were darkly tinted." *Id.* She further argues that "it is certainly conceivable that [Smith] was mistaken about who was driving the [car,]" and that Smith "was busy managing the bar's V.I.P. line and could have easily been incorrect in his identification of Ms. Williams." *Id.* Smith, however, testified that while on a routine trip between the entrances he managed, he saw Williams in the driver's seat of her car. Smith was standing about thirty feet away when he watched Williams back her car into the Buick Le Sabre parked behind her; this was followed by a loud noise. Smith further testified that

5

the Tremors' parking lot was well lit and that Williams remained in the driver's seat of the car as he approached her. When Smith approached Williams, he testified that she got out of her car and began yelling.

Smith's testimony alone placed Williams in the driver's seat of her car and established her as the driver who caused the collision. Although Smith was the sole witness to identify Williams as the driver, "[i]t is well established that the testimony of a single eye witness is sufficient to sustain a conviction." *Brasher v. State*, 746 N.E.2d 71, 72 (Ind. 2001). Williams' appeal is merely a request to reweigh Smith's identification testimony against her assertion that she was not driving her car. Her claims regarding sufficiency amount to an invitation to reweigh the evidence, which we may not do. We conclude that a reasonable fact-finder could find beyond a reasonable doubt that Williams was driving her car when the accident occurred. We therefore affirm her conviction.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.